**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MARTHA E. WILLIAMS,

                          **Plaintiff,**

   v.                                                  **18-CV-350**

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 19. Martha E. Williams ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 12, 15.

## BACKGROUND

Plaintiff applied for DIB and SSI on October 19, 2009, alleging disability beginning on July 13, 2009. Tr. at 236-43, 946.[1] Plaintiff's application was denied at the

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

initial level. Tr. at 105-106. On July 29, 2011, following a hearing, an Administrative Law Judge ("ALJ") found Plaintiff not disabled through the date of the decision. Tr. at 116-25. On May 31, 2012, the Appeals Council remanded the case for further consideration. Tr. at 132-33. Following a second hearing, an ALJ again found Plaintiff not disabled through the date of the decision, January 2, 2013. Tr. at 18-30. On August 4, 2014, the Appeals Council denied her request for review. Tr. at 1-3. On April 2, 2015, the Honorable William M. Skretny so ordered a joint stipulation to remand the case for further proceedings. Tr. at 1068-69; *Williams v. Colvin*, 14-CV-821(WMS), Dkt. Nos. 7 & 8. Pursuant to this Court's order, the Appeals Council remanded the case for another hearing on September 21, 2015. Tr. at 1070-74. At the hearing conducted on February 23, 2017, Plaintiff, who was represented by counsel, requested a closed period of disability from July 13, 2009, through May 1, 2014, the day she began working at substantial gainful activity levels. Tr. at 946. On January 4, 2018, an ALJ found that Plaintiff was not disabled at any time during this closed period. Tr. at 946-65. This action followed. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant

2

restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

Step four requires the ALJ to determine whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If claimant cannot, the analysis proceeds to the fifth (and final) step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: (1) whether the Commissioner's conclusions were based upon an erroneous legal standard; and (2) whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the

4

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *See* 20 C.F.R. §§ 404.1520, 416.920; *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). Preliminarily, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 30, 2015. Tr. at 949. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue, July 13, 2009 through May 1, 2014. Tr. at 949. At step two, he found that Plaintiff had the following medically determinable impairments: non-epileptic seizure/pseudoseizure disorder; degenerative disc disease of the cervical and lumbar spines; obesity; sleep apnea; bipolar disorder; and adjustment disorder with mixed anxiety and depressed mood; as well as the non-severe impairment of cerebral vascular accident, or stroke. Tr. at 949-50.

At step three, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, meets or medically equals the severity of one of the Listings, giving special consideration to Listing 1.04 (Disorders of the Spine); 11.02 (Epilepsy); 12.04 (Depressive, Bipolar and Related Disorders); 12.06 (Anxiety and Obsessive-Compulsive Disorders); and 12.07 (Somatic Symptom and Related Disorders). Tr. at

950-51. The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404. 1567(b) and 416.967(b)[2] with the following limitations:

> The claimant can occasionally balance stoop, kneel, crouch, crawl and climb ramps or stairs but never climb ladders, ropes or scaffolds. She can frequently rotate her neck and frequently reach with the bilateral upper extremities. She can work in an environment with no exposure to hazards such as unprotected heights or moving machinery and can perform work that does not require operating a motor vehicle as an intrinsic part of the job. Further, the claimant can maintain attention and concentration for simple, routine, repetitive instructions and tasks with customary work breaks and can work in a low stress environment (meaning one with no supervisory responsibilities; no independent decision-making required except with respect to simple, routine work related decisions; no work at production rate pace; and no more than minimal changes in work routines, processes or settings). She can have occasional, incidental interaction with co-workers and the public.

Tr. at 952-53.

Considering Plaintiff's age (38 years old at the time of the decision), education (at least a high school education), work experience (past work as a counter clerk and school bus driver), and the aforementioned RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at 963. According to the vocational expert, Plaintiff would be able to perform the jobs of marker, laundry folder, addresser, and laminator. Tr at 963-64.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 13, 2009, her alleged onset date, through the date of his decision. Tr. at 964.

**Judgment on the Pleadings**

The parties have cross-moved for judgment on the pleadings. Dkt. Nos. 12, 15. Plaintiff contends that the ALJ gave "dubious" reasons for rejecting the opinions of Dr. Lixin Zhang, Plaintiff's treating neurologist, that Plaintiff was disabled (Dkt. No. 12-1, pp. 14-21), and that he erroneously relied on Plaintiff's activities of daily living to find that she was capable of working. Dkt. No. 12-1, pp. 21-24). The Commissioner counters that the ALJ provided a thorough and well-supported rationale for giving Dr. Zhang's opinions "little weight" (Dkt. No. 15-1, pp. 14-19), and that he properly considered Plaintiff's daily activities in concluding that Plaintiff was not as impaired as she alleged. Dkt. No. 15-1, pp. 19-21. For the reasons that follow, this Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's motion seeking the same.

**The Treating Physician Rule**

The "treating physician" rule requires ALJ's to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess*, 537 F.3d at 128. Specifically, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic

techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." *Id.* (quotation marks and brackets omitted).

An ALJ may decline to give "controlling" weight to the opinion of a claimant's treating physician, but must "consider several factors in determining how much weight [the physician's opinion] should receive," *Id.* at 129, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

If an ALJ decides not to give "controlling" weight to a claimant's treating physician, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quotation marks omitted). The ALJ need not "explicitly walk through" the factors identified above, "so long as the Court can conclude that the ALJ applied the substance of the treating physician rule." *Eckland*, 349 F. Supp. at 242 (quotation marks omitted). Nonetheless, "[f]ailure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted). Because the "'good reasons' rule exists to ensure that each denied claimant receives fair process, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the

8

weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted). Of course, the ALJ's reasons for discounting a treating physician's opinion must also be "supported by [specific] evidence in the case record." *Id.* at 323 (quotation marks omitted).

**Dr. Zhang's Opinions**

Dr. Zhang opined three times during the closed period of alleged disability that Plaintiff was incapable of working. First, in a September 18, 2010 letter in support of Plaintiff's claim for long term disability benefits, Dr. Zhang stated that Plaintiff was unable to work temporarily, due to dizziness and neck pain with cervical radiculopathy, "is unable to bend, carry, lift," and "has a limited ability for standing/walking." Tr. 660-61. The ALJ gave this opinion "no substantial weight" because it was inconsistent with Dr. Zhang's statements (in the same letter) that Plaintiff's seizures were controlled with medications and her sleep apnea was stable with CPAP use. Tr. at 959-60. Noting that Plaintiff had not been tested for neuropathy related to her cervical spine, the ALJ explicitly found that the "record does not support a limitation that would preclude the claimant from any lifting and carrying regardless of the weights involved." Tr. at 959. Moreover, the ALJ noted, Dr. Zhang's assessment that Plaintiff was totally incapable of lifting or carrying was flatly contradicted by her testimony at the 2011 hearing "that she could lift and carry a 20-lb. bag of potatoes without problems." Tr. at 960. This Court finds that the ALJ properly assigned this opinion less than controlling weight. Under agency regulations, "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Where, as here, the

9

record does not support a doctor's limitation, the ALJ is not required to give it controlling weight.

The ALJ likewise gave "little weight" to the Residual Functional Capacity Questionnaires prepared by Dr. Zhang on June 20, 2011 and November 1, 2012, in which the doctor opined that because of her epilepsy, Plaintiff would be incapable of even "low stress" jobs, and would have to take three unscheduled breaks, two to three hours each, during an 8-hour day. Tr. at 804-07, 909-912. As an initial matter, the ALJ noted that the RFC Questionnaires appeared to be based not on objective medical findings, but on Plaintiff's subjective complaints. On June 20, 2011, the date of the first RFC Questionnaire, Dr. Zhang wrote in his treatment notes, "The main reason we are here today is to help me fill out the form for the SSI, because there are so many detailed questions that we cannot even localize in the medical record." Tr. at 865. Dr. Zhang continued, "We do support her application for the social security disability." Tr. at 865. In the ALJ's view, these statements "undercut Dr. Zhang's questionnaire responses as objective medical opinions based on laboratory and clinical findings and suggest that they are based on the subjective reports of the claimant . . ." This Court agrees. "An ALJ is not required to give controlling weight to [a] treating physician's opinion where 'it was unsupported by the objective medical evidence' and 'based on [the plaintiff's] subjective complaints.'" *Fagner v. Berryhill*, No. 14-CV-6569, 2017 WL 2334889, at *8 (W.D.N.Y. May 30, 2017) (internal citations omitted).

In both RFC Questionnaires, Dr. Zhang listed epilepsy as Plaintiff's sole diagnosis which impacted her ability to tolerate work (Tr. at 904, 909). However, as the

10

ALJ noted, Dr. Zhang's treatment notes do not actually support a diagnosis of epilepsy. By February 2011, Dr. Zhang reclassified her past seizures as nonepileptic events, noted that a January 2011 EEG showed no epileptiform activity, and stated his belief that her ongoing seizures were not epileptic. Tr. at 692-93, 960. After further treatment, Dr. Zhang described Plaintiff's reported episodes as "seizure-like spells" rather than true seizures, assessed a primary diagnosis of delayed sleep phase syndrome, and discontinued listing epilepsy among her diagnoses. Tr. at 835, 837, 839-40, 960. The ALJ noted that Dr. Zhang's treatment records also did not support his check-the-box findings in the RFC Questionnaire that Plaintiff suffered from eye focusing problems, lethargy, double vision, coordination disturbance, and lack of alertness. Tr. at 807, 912, 961. Finally, the ALJ found that Dr. Zhang's statement in both RFC Questionnaires that Plaintiff had "no feeling [on the] right side of [her] face, [on the] left side of [her] body due to stroke [on] Oct 28, 2002" was flatly contradicted by the medical evidence, including neurologist Dr. Mark Frost's 2009 assessment that she had recovered almost entirely from her past stroke and was intact upon his neurological exam. Tr. at 530.

The fact that Dr. Zhang's treatment notes do not support a diagnosis of epilepsy, the sole condition alleged to render her disabled, cannot be understated and provides ample basis to disregard his RFC Questionnaires. In fact, the record is replete with normal neurological examination findings throughout the relevant period. Tr. at 481 (noting on 7/14/2009 that Plaintiff was oriented, and her speech, affect, and reflexes were normal with no motor or sensory deficits); Tr. at 517 (finding on 1/6/2010 that Plaintiff was alert and interactive and her memory appropriate); Tr. at 523-25 (same on 1/13/2009); Tr.

11

at 528 (noting on 9/4/2009 that Plaintiff was awake and alert, her cognition grossly intact, her mental status score 30/30, her pupils equal, round and reactive to light, her sensory exam intact bilaterally to all primary modalities, and her gait stable); Tr. at 530 (same on 1/27/2009); Tr. at 603 (finding on 5/26/2010 that Plaintiff had no tremor or abnormal movements, had stable gait and station, was alert and active, and had full strength in her upper and lower extremities); Tr. at 687 (noting on 1/3/2011 that Plaintiff's cranial nerves were intact, her reflexes normal, and that she suffered from no focal neurological deficits); Tr. at 693 (noting normal neurological findings on 2/11/2011, stating that Plaintiff has "seizure-like" activity, "but we are still not sure that they are truly epileptic or not"); Tr. at 771 (normal neurological exam on 5/6/2011); Tr. at 774 (normal neurological exam on 3/25/2011); Tr. at 836 (noting on 4/2/2012 that Plaintiff was alert and oriented, demonstrated symmetrical facial sensation and no atrophy, had intact finger to nose and rapid alternating movements bilaterally and had a stable gait); Tr. at 866 (reported on 6/20/2011 that Plaintiff had a normal neurological exam); Tr. at 874 (normal neurological exam on 7/12/2012); Tr. at 877 (normal neurological exam on 5/31/2012); Tr. at 1384 (on 5/13/2014, noting that Plaintiff was alert and interactive, her fund of knowledge and memory appropriate, that she had full strength in upper and lower extremities, no tremor, no abnormal movements, symmetrical reflexes, stable gait, speech fluent and sensory intact to all modalities).

Under the circumstances, this Court finds that the ALJ properly rejected Dr. Zhang's restrictive assessments, because they were not supported by the record. *Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) (holding that the ALJ appropriately declined to give great weight to a portion of the

treating physician's opinion, which the ALJ found to be inconsistent with the doctor's examination findings and other information in the record).

**Plaintiff's Daily Activities**

During the relevant period, Plaintiff reported that she did dishes and laundry, vacuumed, mopped the kitchen, cleaned the bathroom (although she said that cleaning might take a while because of dizzy spells), took care of her dog, prepared meals with her daughter, shopped for groceries, medications, and household goods (although she said she walked slowly and could not find items easily), played cards, did puzzles, socialized with houseguests, and did scrapbooking. Tr. at 358-60, 362-63, 534, 958-59. Plaintiff was also able to work part-time toward the end of her alleged period of disability. Tr. at 595, 1005, 1017-18, 1020. The ALJ found that these daily activities were not consistent with her allegations of disabling symptoms and limitations. Tr. at 958. Contrary to Plaintiff's argument, this was not error.

The Second Circuit Court of Appeals has held that an ALJ is not required to accept the claimant's subjective complaints without question," but rather "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ considered various factors in deciding that Plaintiff was not as impaired as she claimed, including, EEGs showing no epileptiform activity, numerous neurological exams within normal limits, and her activities of daily living. These were all permissible factors. 20 C.F.R. §§ 404.1529 and 416.929; *see, e.g., Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ correctly noted that Poupore was able to care for his one-

year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer). Accordingly, Plaintiff's motion for remand on this basis is denied.

## CONCLUSION

For the reasons stated herein, this Court finds that the ALJ's decision is free from legal error and supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is hereby GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
              September 25, 2019

                                         *s/ H. Kenneth Schroeder, Jr.*
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**